### JOE MIKESKA, JR., v. THE STATE.

No. 6036. Decided February 23, 1921.

**Wife Desertion—Insufficiency of the Evidence.**

Where, upon trial of wife-desertion, the evidence was insufficient to sustain the conviction, or to show any violation of the statute, the conviction could not be sustained and the judgment must be reversed and the cause remanded.

Appeal from the County Court of Burleson. Tried below before the Honorable J. T. Carter.

Appeal from a conviction of wife-desertion; penalty, a fine of $500.

The opinion states the case.

*Jesse Garrett,* for appellant.—Cited Mercardo v. State, 218 S. W. Rep., 491; Wallace v. State, 219 id., 206; Windham v. State, 192 id., 248; Verse v. State, 193 id., 303.

*Alvin M. Owsley,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted of wife desertion in the County Court of Burleson County and his punishment fixed at a fine of five hundred dollars.

There is much in this record which does not seem pertinent to a case of wife desertion, but the substance of it seems to show that the marriage of the two young people was hurried up upon discovery that the girl was about to become a mother, said marriage taking place at the home of the girl's parents, in March, 1919. The family of both parties seem to be Bohemians and neighbors, and aside from this trouble and its connecting issues, they were on good terms with each other. The date of the alleged desertion is November 25, 1919, and that is the day prosecutrix testified appellant left her. When married prosecutrix was fifteen years old and appellant twenty. She seems to have remained principally at her father's home and he at his father's for several

months after the marriage, it being in evidence that her mother was
not very well and that appellant had begun preparations for a crop to
be made during 1919 on his father's place. Appellant would come over
to see prosecutrix usually on Sundays, and in July, 1919, he came to
live at her father's house. It seems agreed by all parties that on the
morning of November 25, 1919, the day of the alleged desertion, the
father of prosecutrix paid appellant twenty dollars for some work and
that appellant left to go and work for his grandfather somewhere in the
neighborhood. Prosecutrix says in her testimony that she decided the
day appellant left her that she would not live with him again. She also
testified that two days after he left, John B. Mikeska, a relative of ap-
pellant, accompanied by his wife, came to see her and told her that as
soon as she was well appellant wanted to send for her and for her to
live with him again. Prosecutrix says she told them Joe had quit her
and if he wanted her he must come after her. She further testified
that on December 1, some six days after the alleged desertion, appel-
lant wrote her a letter which she received on December 2, in which he
sent her a check and asked her to come and live with him, which letter
she had never answered. It further appears that thereafter and during
almost every month up to the time of the trial she had received letters
from him urging her to come and live with him, and in most of them
he enclosed a check. She says she did not cash these checks until they
aggregated one hundred and twenty-eight dollars, her explanation of
this delay being that she wanted to wait until she had enough to buy a
horse and buggy. Appellant testified in his own behalf that he loved
his young wife and baby and made many efforts to get them to come
and live with him, without avail. A number of apparently disinterest-
ed persons testified that they had heard the father of prosecutrix de-
clare that she should not again live with appellant, some of them stat-
ing that they tried to get him to let her go back and so live, but that he
refused. Appellant says that his wife and her father threatened him
on the day he left to go to work for his grandfather, unless he paid her
$1,800, and that he tried to get the money, but failed. Prosecutrix
denied the threats, but said appellant promised to bring her $1,800. It
was in testimony by appellant's grandfather and grandmother that he
tried to get the money from them. A letter was introduced written
on December 1, 1919, six days after said alleged desertion, by attorneys
to appellant, stating that the father of prosecutrix had employed them
to represent prosecutrix in a $10,000 suit against appellant, and that
if he did not see said attorneys within five days complaint would be
filed against him for wife desertion and a suit for damages against him
and his father. Said attorneys appeared in the prosecution of this
case, but stated that they had been employed by the father of prosecu-
trix, who had paid one of them five hundred dollars, in said civil suit,
and that their appearance in this prosecution was incidental. We are
unable to find any testimony in this record showing desertion on the
part of appellant. No claim is made that he deserted his wife from

March, 1919, the date of his marriage,—up to July, 1919, notwithstanding, during this time appellant was staying at his father's house and prosecutrix at the home of her parents. This arrangement seemed satisfactory. On June 21, 1919, she wrote him the following letter.

"Caldwell, Texas, June 21, 1919.

Hello Husban

"How are you getting along. hope fine and I forgot to write you this week Mamma was so sick and she diden had no doctor because we can get no doctor, doctor diden was at home yet when we when home from your all house. Well you know what kind sick she had. the same sick like she did have that one time you was here, when she have that doctor. tell to you papa and Mamma to come for sure to-Morrow the 22 of June. Dont be mad on me because I do everything for you and I go next year with you every where you want me to go. I will go to Caldwell to so it be all for today from your wife.

(Signed) "Milady

"Sweet kiss to my Husban answer soon to me Please."

How could there be desertion when it is admitted by all parties that two days after the day of the alleged desertion his relatives came to prosecutrix with a message from him asking her to come and live with him? Was it desertion when he wrote her six days after November 25 and sent her a check and wanted her to come and live with him? Was he deserting her when she swore that she decided on November 25 that she would not again live with him? It further appears that about the first of January he sent other parties to her to try to induce her to come and live with him. We are unable to conclude that such desertion as is contemplated by this statute, finds any support in this testimony. The object of this statute is to punish crime and to prevent *bona-fide* desertions of helpless women and children, and great care and caution should be used to prevent resort to it in cases of hasty quarrels or unfortunate temporary separations between people who for many reasons ought to be brought back together and not driven further apart.

Not being able to find support for this verdict in the evidence, the cause will be reversed and remanded.

*Reversed and remanded.*